**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL ACTION NO.** 1:20- cv- 32

RECEIVED
ASHEVILLE, N.C.

FEB 04 2020

Clerk, U.S. Dist. Court
W. Dist. of N.C.

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) <br> And THE STATE OF NORTH CAROLINA, ) <br> *EX REL.* GINGER L. HILL, ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> HEALTHKEEPERZ, INC, ) <br> ) <br> Defendants. ) <br> _____ ) | **COMPLAINT** <br><br> **FILED *IN CAMERA* AND** <br> **UNDER SEAL** <br><br> 31 U.S.C. § 3730(b)(2), FEDERAL <br> FALSE CLAIMS ACT; N.C. GEN. STAT. <br> § 1-608(b)(2), NORTH CAROLINA <br> FALSE CLAIMS ACT <br><br> **JURY TRIAL DEMANDED** |

**NOTE TO CLERK:** Complaint to be filed *IN CAMERA* **AND UNDER SEAL.** Do not place in press bin and do not enter on Pacer until Court's Order.

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT...................................................................... 2

II. JURISDICTION AND VENUE .................................................................. 3

III. THE PARTIES ........................................................................................ 4

IV. THE FEDERAL AND STATE FALSE CLAIMS ACT ....................................... 6

V. GENERAL ALLEGATIONS ..................................................................... 11

VI. COUNTS ............................................................................................. 19

VII. REQUEST FOR RELIEF ....................................................................... 22

VII. DEMAND FOR JURY TRIAL ................................................................. 23

1

## COMPLAINT

1.    The United States of America and the State of North Carolina, by and through the Qui Tam Relator and State Qui Tam Plaintiff Ginger Hill (hereinafter referred to as the "Plaintiff" or "Relator"), bring this action under 31 U.S.C § 3729, *et seq.*, as amended (the False Claims Act or "FCA") and N.C. Gen. Stat. § 1-605 *et seq.*, (the "NC FCA") to recover all damages, penalties and other remedies against the named Defendant pursuant to the FCA and the NC FCA on behalf of the United States and North Carolina.

## I.  PRELIMINARY STATEMENT

2.    This is an action to recover damages and civil penalties on behalf of the United States of America and the State of North Carolina, for violations of the FCA and NC FCA arising from false or fraudulent records, statements, claims, or any combination thereof, made, used, caused to be made, used, presented, or any combination thereof, by the Defendant, its agents, employees, co-conspirators, or any combination thereof, with respect to the Defendant's claim submissions of and reimbursements for false claims to N.C. Medicaid.

3.    As described more fully herein, the Relator alleges that the named Defendant, for at least the past six years and continuing to and past the date of this Complaint, with actual knowledge of the information, and/or with deliberate ignorance and/or reckless disregard for the truth or falsity of the information, and/or with intention to deceive the government by intentionally submitting false claims for reimbursement to NC Medicaid for the Defendant's Case Management ("CM") services ("CM services") arising within NC Medicaid's Community Alternatives Program for Disabled Adults ("CAP/DA").

2

4. The Defendant's false claims relate to submission of claims for reimbursement under NC Medicaid's CAP/DA program for:

i) units of CM services not rendered;

ii) billing for non-covered services as covered CM services; and/or

iii) exaggerating the number of service units for reimbursements for the CM services performed for one or more qualified Medicaid beneficiary clients ("beneficiaries").

5. The Defendant knowingly and intentionally instructed its Case Manager employees ("Case Managers") and required said Case Managers to exaggerate the time necessary to render CM services to one or more beneficiaries by requiring specific units of service time to be recorded for reimbursement without regard to actual service time provided; requiring the breakout of multi-beneficiary CM services in order for the same to be billed as one-on-one services at unrelated set rates or exaggerated units of service time; and to claim and seek reimbursement for non-covered services.

## II. JURISDICTION AND VENUE

6. Plaintiff/Relator realleges and incorporates herein all allegations made heretofore as though fully set forth herein.

7. Jurisdiction is founded upon the Federal False Claim Act, 31 U.S.C. § 3732(a) and (b) and 28 U.S.C. §§ 1331 and 1345.

8. Jurisdiction for the North Carolina False Claims Act claims (N.C. Gen. Stat. §§ 1-605 *et seq.*) are pendent to the federal claims herein, pursuant to 28 U.S.C. § 1367.

9. Venue is proper in the Asheville Division of the Western District of North Carolina under 31 U.S.C. § 3732(a) and (b) and 28 U.S.C. § 1391(b) and (c), in that the Defendant is

3

the CAP/DA Lead Agency for Swain and Jackson Counties of North Carolina (both of which are within the purview of the Western District of North Carolina, Asheville Division) and operates a division of its Case Management services in Jackson County, North Carolina.

10. This is an action for treble damages and penalties for each false claim and each false statement under the False Claims Act, 31 U.S.C. §3729, *et seq.*, as amended and the NC False Claims Act, N.C. Gen. Stat. §§ 1-605 *et seq.*, as amended.

### III. THE PARTIES

11. Plaintiff/Relator realleges and incorporates herein all allegations made heretofore as though fully set forth herein.

12. The United States is a plaintiff to this action pursuant to the FCA. The Relator brings this action on behalf of the United States Department of Health and Human Services ("HHS") and the Centers for Medicare and Medicaid Services ("CMS")

13. North Carolina is a plaintiff to this action pursuant to the applicable provisions of the NC FCA and the State Qui Tam Plaintiff (Relator) brings this action on behalf of North Carolina Department of Health and Human Services ("NC DHHS"), NC Medicaid Division of Health Benefits ("NC Medicaid").

14. Relator and State Qui Tam Plaintiff, Ginger Hill, is a citizen of the United States and resident of North Carolina. The Relator is currently employed by the Defendant as a NC Medicaid CAP/DA Case Manager in the Defendant's Jackson/Swain County division. The Relator is a resident of Waynesville, NC, located in Haywood County.

15. Before the filing of this complaint, the Relator served a copy of the same upon the United States and the State of North Carolina, together with a written disclosure statement

4

setting forth and enclosing all relevant material evidence and information she possesses, pursuant to the applicable FCA and NC FCA requirements.

16. The information and documentation of the Relator tendered herein is not derived from public sources, as defined by 31 U.S.C. § 3730(e)(4)(A), (B) (2012). The Relator is the original source of the allegations and claims herein, as defined by to 31 § 3730(e)(4)(B) (2012). *Also see*, N.C. Gen. Stat.§§ 1-605 *et. seq.*

17. The Defendant, **Healthkeeperz, Inc.,** is a North Carolina corporation with its registered office being 812 Candy Park Road, Suite 7101-C, Pembroke, North Carolina 28372. Its registered agent is Edward K. Brooks, who is the corporate Secretary for the Defendant, with his registered agent mailing address being Post Office Box 2880, Pembroke, North Carolina 28372.

18. This suit is not based on prior public disclosure of allegations or transactions in a Federal criminal, civil, or administrative hearing in which the Federal Government or its agent was or is a party; in Congressional, Government Accountability Office or other Federal report, hearing, audit, or investigation; or in the news media, or in any other location as the term "publicly disclosed" is defined in 31 U.S.C. § 3730(e)(4)(A), (B) (2012) or the NC FCA.

19. Within the past 120 days, the Relator has reported her allegations and claims to NC Medicaid and its Office of Program Integrity and Compliance (OCPI). To the extent there has been a public disclosure unknown to Relator, she is an "original source" under the aforementioned statute 31 U.S.C. §3730(e)(4)(B)(i) and (ii), as amended. *Also see*, N.C. Gen. Stat. §§ 1-605 *et. seq.*

20. As more fully set forth in this Complaint, Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions. Relator has voluntarily provided the information on which the allegations herein are based to the Government before filing this action under the FCA.

21. Upon her disclosure to NC Medicaid, the Relator was instructed by employees of NC Medicaid to cease submitting service units of time to her employer which she believed to be inaccurate, unlawful or for non-covered services and to inform her employer that she would not comply with its directions as to CM service record-keeping in Barnestorm or E-Cap which was not in conformity with the applicable NC Medicaid rules and regulations as set forth in the Clinical Coverage Policy No: 3K-2 (2019) or other CAP/DA Case Management guidance.

## IV. THE FEDERAL AND NORTH CAROLINA FALSE CLAIMS ACTS

22. Plaintiff/Relator realleges and incorporates herein all allegations made heretofore as though fully set forth herein.

23. The FCA provides, among other things, that any person who (1) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or (2) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable to the United States for a civil monetary penalty plus treble damages. 31 U.S.C. § 3729(a)(1)(A)-(B).

24. The term "knowingly" means "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the

6

information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). Proof of specific intent to defraud is not required. 31 U.S.C. § 3729(b)(1)(B).

25. The term "claim" means "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (1) is presented to an officer, employee, or agent of the United States; or (2) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (a) provides or has provided any portion of the money or property requested or demanded; or (b) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded ...." 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

26. The term "'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

27. North Carolina has enacted a False Claims Act modeled after the FCA which contains provisions similar to those quoted above. *See*, N.C. Gen. Stat. §§ 1-605 *et. seq.*

28. Relator asserts claims under the NC FCA to recover for the State of North Carolina in the amounts N.C. Medicaid reimbursed Defendant for the false claims presented as alleged herein.

29. Medicaid is a government health insurance program funded jointly by the Federal and State governments. *See* 42 U.S.C. § 1396 *et seq.* Each State administers its own Medicaid program. However, each State program is governed by Federal statutes, regulations and guidelines. The federal portion of each State's Medicaid payment – the

Federal Medical Assistance Percentage – is based on that State's per capita income compared to the national average.

30. From 2013 through the date of filing of the Relator's Complaint and continuing thereafter (the "relevant time period"), the Relator is informed and believes that the Federal Medical Assistance Percentage for the State of North Carolina was between approximately 65.51% and 67.21%. *See,* http://kff.org/medicaid/state-indicator/federal-matching-rate-and-multiplier/.

31. Within the federal guidelines, States are given the freedom to develop home and community-based services waivers ("HCBS Waivers") to meet the needs of people who prefer to receive long-term care services and supports within their home or community, rather than in an institutional setting.

32. HCBS waivers are approved by CMS for a specified time period. The waiver establishes the requirements for program administration and funding. Federal regulations for HCBS waivers are found in 42 CFR Part 441 Subpart G, Home and Community-Based Services: Waiver Requirements.

33. The Community Alternatives Program for Disabled Adults ("CAP/DA") is a NC Medicaid Home and Community-Based Services (HCBS) Waiver authorized under section 1915(c) of the Social Security Act and complies with 42 CFR § 440.180.

34. The following regulations give the NC DHHS the authority to set the requirements contained in this policy and the CAP Waiver: 42 CFR Part 441 Subpart G, Home and Community-Based Services: Waiver Requirements; Section 1915 (c) of the Social Security Act authorizes the Secretary of Health and Human Services to waive certain specific

8

Medicaid statuary requirements so that a state may offer HCBS to state-specified target groups of Medicaid beneficiaries who meet a nursing facility level of care that is provided under the Medicaid State Plan. *See*, Sec. 1902, 42 U.S.C. § 1396a. Section 1902 of the Social Security Act provides that Medicaid services are available to all categorically-eligible individuals on a comparable basis.

35. NC Medicaid is the administrative authority of the waiver for the state of North Carolina and outlines the policies, procedures, submission and reimbursement of service claims governing the CAP/DA waiver program.

36. NC Medicaid appoints local case management entities to provide the day-to-day operation of the waiver to ensure the primary six waiver assurances are met. These assurances are:

    i.     Level of Care (LOC);
    ii.    Administrative Authority;
    iii.   Qualified Providers;
    iv.   Services Plan;
    v.    Health and Welfare; and
    vi.   Financial Accountability.

37. The Defendant is the CAP/DA Lead Agency for the following North Carolina Counties: Alexander, Anson, Caldwell, Camden, Currituck, Hertford, Jackson, Pasquotank, Perquimans, Robeson, Scotland, and Swain. *See*, NC Medicaid's CAP/DA Lead Agency Directory (2019), attached hereto and made a part hereof, Ex. 1.

38. Through the relevant time period, the CM services described herein are services offered to CAP/DA beneficiaries to assist in navigating community systems and gaining access to Medicaid services to meet their identified needs. The comprehensive interdisciplinary assessment identifies the lack of an informal support system and the need for intervention by a case manager. When the assessment identifies a CAP

9

beneficiary to be at risk of institutionalization, case management must be listed in the service plan on a monthly basis. The CAP beneficiary has the option to select an approved case management provider, which is the sole case management provider for that CAP beneficiary.

39. Throughout the relevant time period, reimbursement for CM services claimed by the Defendant were jointly paid for by the United States and the State of North Carolina (referred herein collectively as "Government Payors").

40. Each time a provider submits a claim for reimbursement from NC Medicaid, the provider is certifying that the service was provided in accordance with Federal and State statutes, regulations, and program rules.

41. Generally, for a claim to be reimbursable, a provider must provide the service called for as authorized and approved within the beneficiary's Plan of Care ("POC"), and in accordance with the requisite unit of service time. The unit of service time for CAP/DA CM services is "one unit = 15 minutes". *See*, NC Medicaid Community Alternatives Program for Disabled Adults (CAP/DA) Clinical Coverage Policy No: 3K-2 (2019).

42. The care and duration of the qualified CM service claimed must be supported by accurate, relevant and sufficient documentation.

43. Knowingly causing the submission of claims for reimbursement which are ineligible for payment under the identified health care waiver program or the applicable Clinical Coverage Policy constitute violations of the FCA and the NC FCA

10

## V.  GENERAL ALLEGATIONS

44.  Plaintiff/Relator realleges and incorporates herein all allegations made heretofore as though fully set forth herein.

45.  At all times relevant hereto, the Defendant knew its claims for CAP/DA CM services were in excess of the actual service time provided by its Case Managers to its beneficiaries and were supported by false time entries it required its Case Managers to record.

46.  The Relator's review, analysis and identification of the Defendant's improper record-keeping and claim actions and practices revealed that Defendant knowingly and intentionally submitted reimbursement claims to NC Medicaid, and received reimbursement on said claims for:

i.    exaggerated service time units;

ii.   falsified service time units; or

iii.  non-covered services for Case Management

47.  The Relator is informed and believes that there are 40 or more Case Managers employed by the Defendant across the state of North Carolina.  On average, each Case Manager manages, supervises and oversees 25 – 30 beneficiaries for a total of 1,000 to 1,200 beneficiaries who receive CM services from the Defendant.

48.  Each CAP/DA beneficiary may receive annually, up to three hundred and twenty (320) fifteen-minute service units, equaling eighty (80) hours of CM services from the Defendant. *See*, Attachment A, Section E, Clinical Coverage Policy No: 3K-2.

49.  From 2012 to the present, NC Medicaid reimbursed CAP/DA Case management

11

services in fifteen-minute units at the rate of $14.14 per unit. An additional rate of $ 0.34 per 15-minute units could be charged for specialized medical equipment and supplies and or home accessibility and adaptation services. *See*, Community Alternatives Program Fee schedules for Disabled Adults (CAPDA), attached hereto and made a part hereof as Ex. 2(a)-2(d).

50. If each of the Defendant's beneficiaries received the maximum amount of CM service hours for a one-year period, NC Medicaid could reimburse the Defendant up to $5,429,760 for CAP/DA CM services rendered to, approximately, 1,200 qualified beneficiaries. Over a six-year period the reimbursement for CM services by the Defendant could be as high as $32,578,560.

51. For the first half of the 2019 calendar year Defendant has notified the Relator and other Case Managers that its CAP/DA CM service revenue was in excess of $2.3 million dollars. The Defendant has notified its Case Managers that its CM service reimbursement goal is $400,000/mo.

52. The Defendant requires its Case Managers to record their work time in a program called Barnestorm. Additionally, the Defendant requires it Case Managers to submit their CM service time to NC Medicaid by way of the program known as E-Cap.

53. The Relator begin working for the Defendant June 25, 2019 as a CAP/DA Case Manager in the Defendant's Jackson County, North Carolina offices.

54. Immediately, upon her entry on duty with the Defendant, her supervisor and other Defendant managers notified and required that the Relator record her work time in Barnestorm to be equal to the CM service time Relator was to submit to NC Medicaid in E-

Cap. The Defendant required all of its Case Managers to bill in E-CAP what was reported in Barnestorm.

55. To facilitate the Relator's recording of work time and submission of CM services to NC Medicaid, the Relator was given a CAP Case Management Care Standards guide created by the Defendant and utilized by all of the Defendant's CAP/DA Case Managers. *See, CAP Case Management Care Standards*, attached hereto and made a part hereof as Ex. 3.

56. The Defendant's CAP Case Management Standards (Ex. 3), has a beginning note that states:

> **** <u>PLEASE NOTE:</u> THE LIST BELOW INCLUDES MANDATORY CARE STANDARDS THAT ARE TO BE MET FOR EACH BENEFICIARY. <u>HOWEVER, THE UNITS LISTED ARE NOT MANDATORY.</u> THIS IS A GUIDE THAT WAS DEVELOPED WITH THE ASSISTANCE OF CAP CASE MANAGERS AND RNS. IF FOLLOWED, YOU WILL BE ABLE TO EASILY MEET THE NEEDS OF YOUR PATIENTS WHILE MEETING COMPANY GOALS. ****

57. Though the management standards note identifies the CM service time units E-CAP submissions as "not mandatory", in fact and pursuant to the direction of the Relator's immediate supervisor as well as the Defendant's regional and statewide managers, the time units identified were the required minimum time units the Relator was to utilize in her recording of work time within the Barnestorm program and in her recording and submission of CM service time unit claims for reimbursement to and in the NC Medicaid E-Cap billing reimbursement program.

58. If the Case Manager was not meeting the required billing hours the Case Manager would receive a call from the Team Lead to discuss how the Case Manager could meet her

targeted reimbursement hours as required. For example, in August 2019 the Case Managers for the Jackson/Swain division of the Defendant did not meet the required billing hours and the Team Lead sent an email or phone call.

59. Additionally, a review of the Defendant's CAP Case Management Standards (Ex. 3) reflects that at no time should a unit of service be less than 8 minutes which assures that all partial 15-minute units would be counted as one whole unit under the applicable "7/8 rule."

60. To further facilitate the Relator's recording of work time and submission of CM services to NC Medicaid, the Relator was given Billing Summary guidance created by the Defendant and utilized by all of the Defendant's CAP/DA Case Managers. *See*, Billing Summaries (versions 7/1/2019 and 10/1/2019), attached hereto and made a part hereof as Ex. 4(a) and 4(b).

61. Ex. 4(b) includes a note on it similar to that of Ex. 3:

> ****THIS IS NOT A LIST OF MANDATORY UNITS. THIS IS A GUIDE THAT IF FOLLOWED, YOU WILL BE ABLE TO EASILY MEET THE NEEDS OF YOUR PATIENTS WHILE MEETING COMPANY GOALS.****.

Ex. 4(a) does not carry any note and reflects only the required minimum units for recording work time in the Defendant's Barnestorm program and reimbursement claims recorded in e-Cap.

62. Pursuant to the direction of the Relator's immediate supervisor as well as the Defendant's regional and statewide managers, the time units identified within the Billing Summaries were the minimum time units the Relator was required to utilize in recording her service time in the Defendant's Barnestorm program and in her submission of CM

service time unit claims for reimbursement to NC Medicaid.

63. Additionally, upon her entry on duty, the Relator was given a guidance sheet to be utilized in her drafting, creation, review and updating of the Plan of Care for each of her beneficiaries. *See*, Billing Summaries (versions 10/1/2019 and 7/1/19) attached hereto and made a part hereof as Ex. 4(a) and 4(b). Regardless of the extent or need for CM services to a beneficiary the Defendant required that all Plans of Care maximize the reimbursable annual CM service units to 320 fifteen-minute units. ("CM 292 Units, CM Assess 28 Units").

64. From the inception of Relator's employment with the Defendant, the Defendant provided the Relator with various additional guidance regarding service standards, responsibilities and duties of a Case Manager, including but not limited to home visits, plan of care revision, vendor services reviews, etc. The Defendant's guidance is utilized by all of its CAP/DA Case Managers.

65. In almost every CM service guidance created by the Defendant and provided to its Case Managers, the Defendant directs the Case Manager as to the mandatory minimum amount of time each must record both in Barnestorm and E-Cap for the various CM services.

66. The Relator has been informed by the Defendant's management that the guidance and exhibits identified above are utilized throughout the Defendant's CAP/DA territories and by all Case Managers.

67. The Defendant systematically and knowingly submitted false claims for reimbursement for CAP/DA CM services and has received reimbursement for the same for the following:

15

a. Staffing Conference Calls: Each week of the calendar year the Defendant's Program Director or a Case Manager Team Leader facilitated a Case Manager conference call; wherein any announcements concerning CAP changes, or changes within the company were made together with a short discussion about policies or procedures. The weekly calls range from 10 - 20 minutes. For each staff conference call, each Case Manger was directed to submit claims for reimbursement on E-Cap for fifteen minutes (one unit) for each of their respective assigned beneficiaries. Starting in September 2019, the Jackson County division case managers were told to increase their claims for staff conference calls to two units (30 minutes) for each respective beneficiary. The Relator is informed and believes that many of the other offices had been billing 30 minutes for each beneficiary for quite some time prior to September 2019. Staffing is not a billable task.

b. Quarterly Multi-Disciplinary Team Meetings ("MDT Meetings"): Case Managers were directed to submit claims for 1 hour (4 units) for quarterly waiver contacts. The process for this task is to complete a form (see attached, and made a part hereof as Ex. 5 and fax to the various beneficiary's service providers for review and completion. After faxing the form to the service provider, Case Managers were instructed to claim reimbursement for 1 unit (15 minutes) for each provider a CM faxed a form to. Thereafter, the CM was to complete the home visit with the beneficiary and submit a CM service claim for reimbursement on E-Cap for an additional minimum one hour (4 units). The one hour for MDT meetings and the follow-up one hour for completion of the home visit was to be claimed regardless of actual service time expended. Meetings have never been scheduled, faxes and calls are made to the service providers. Case Managers were to coordinate face to face have meetings with the beneficiary and the service providers accordance with NC Medicaid guidance.

c. To complete the MDT meetings, the CM would receive completed provider forms back, CMs were directed to claim an additional 1 hour (4 units) of CM Service time for each client that the CM received back a completed Provider form, regardless of the actual service time expended. (The Relator is informed band believes that the Defendant changed its fax receipt billing guidance in August 2019. Starting in August 2019, a CM could contact providers by phone and for each provider who worked with five or more beneficiaries the CM was to submit CM service claim for reimbursement of 1 hour (4 units) for each beneficiary served. If CM called one provider to talk about 4 beneficiaries, Defendant directed CM to bill .25 for each beneficiary discussed. The CM would bill 1.0 hours when the phone call was approximately 15 to 20 minutes.

d. The minimum amount a CM was to bill for any MDT's is 3.0 hours without regard to actual service time of the MDT.

e. Case Management Review: Every week Case Managers were required to cross reference the work time reports in Barnestorm with what they had submitted for reimbursement in E-Cap. This review is a non-covered service. However, Case Managers were directed to claim 15 minutes (1 unit) for each of the respective beneficiaries,

regardless of the time necessary to complete the review.

f. CNR: At the end of the month, all Case Managers prepared the CNR's for the upcoming month. The first task was to print the current assessment for each beneficiary from E-CAP, print the direction to the beneficiary's residence starting at the office, and a face sheet needed to be included with the beneficiary's name, contact number and emergency contact and any notes the CM had. The CM would put all this information in a basket so the visiting nurse could pick up and utilize in her beneficiary assessment. Case Managers were directed to submit CM service for this task at .5 hours (2 units) regardless of actual service time expended. Also, this is an administrative task that is not eligible for Medicaid reimbursement. The CNR visit was to be billed at least 1.5 hours and the nurse was also required to submit claims for at least 1.5 hours for her visit. The Case Manager and the Nurse was instructed to claim at least 1.5 hours, even though the visit may have only lasted 30 minutes. The Supervisor reviewed all billing at the end of the month. The Relator was directed by her Supervisor to change the amount of time the Relator spent with a beneficiary to 1.5 hours even though the Relator had spent less that 1.5. The Case Manager and the Nurse were not allowed to go on the visit together. Thereafter, the Case Manager updated the beneficiary's information in E-Cap (called SW Prep) and the nurse recorded her information in E-Cap (called SN Prep). The Case Manager was directed to bill 1.0 hours (4 units) for data input into E-Cap and the Nurse was directed to claim reimbursement for an additional 1.0 hours (4 units) for the Nurse's data input into E-CAP. Thereafter the Case Manager was to develop the Plan of Care (POC) for the beneficiary. The Defendant requires its Case Managers to claim a minimum of 1.0 hour (4 units) for the creation of the Plan of Care regardless of actual service time expended. Then the Case Manager takes the paper work to the client to review and get signatures which is billed at an additional 1.0 hour (4 units) regardless of actual service time expended.

g. Admissions: The Case Manager and the Nurse performed the same process as above except both the nurse and Case Manager were directed to submit claims for reimbursement for 2.0 (8 units) for each initial home visit.

h. Incident reports: When a beneficiary dies or a significant hospitalization occurs the Case Manager must complete an incident report in E-CAP. For each Incident Report completed, the Case Manager is required to claim CM services on E-Cap a minimum of .50 hours without regard to the actual time expended in investigating the incident and completing the Incident Report. Most of the time it took less than 20 minutes for investigation and report to be completed.

i. Plan of Care Revisions: If a Case Manager is required to revise a beneficiary's Plan of Care, the Case Manager would contact the beneficiary's healthcare provider for copies of the new/revised orders if required. When the orders came back the Case Manager was to develop/revise the POC in E-CAP. The Defendant directed all its Case Managers to submit claims of CM service for .50 hours for development and .50 for obtaining signatures from the clients (total of 4 units). On many occasions a POC revision does not

17

require signatures if the services being added or deleted does not affect the beneficiary's budget. (e.g. change of POC to include "pull-ups" or "ensure" to the plan – I will need to check to make sure these items do not affect the budget). When physician orders or beneficiary signatures are not required the revision takes less than .50 hours to complete; however, Case Managers are directed to submit claims for the development, revision and confirmation of the revised POC.

      j.   Hurricane Dorian Report: Each Case Manager was required to complete an excel spreadsheet (I will get you a copy of this spreadsheet) and forward it to the Team Lead in which she compiled a report for the state. Each Case Manager submitted a claim of .25 (1unit) per beneficiary on their caseload. Even though a beneficiary was not affected by Hurricane Dorian, the case manager still submitted a claim.

      k.   Task Sheets Review - Service provider submits in-home aides completed task sheets to the Case Manager showing all the tasks the in-home aide completed for the beneficiary. The Case Manager is required to compare the Task Sheets to the beneficiary's POC to certify that the task was authorized and approved under the POC. The Defendant directed all Case Managers to bill a minimum of .25 hours for each Task Sheet submitted regardless of actual service time expended (this is a component of the minimum 8-minute rule the Defendant had for claims submissions).

62. The Relator is informed and believes that this system-wide submission of false and fraudulent claims for exaggerated time, non-covered services or enhanced CAP/DA Case Management service claims continues through the date of this Complaint.

63. Through these acts, for at least the past six (6) years to the present and continuing the Defendant knowingly presented, or caused to be presented, false or fraudulent claims for payment to the United States in violation of § 3729(a)(1)(A) of the FCA and for reimbursement by North Carolina in violation of the NC FCA.

64. Such false claims caused actual damages to the United States and the State of North Carolina in an amount estimated to be in excess of Six Million Dollars ($6,000,000.00) for the identified six-year time period.

## Count I
### Federal False Claims Act
### 31 U.S.C. § 3729(a)(1)(A)-(B)

65. Plaintiff/Relator re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

66. Throughout the relevant time period, Defendant knowingly directed and required its Case Managers to submit claims, or caused claims to be submitted for CM services which were exaggerated as to the number of actual time service units provided or were for non-covered services. Through these acts, the Defendant knowingly presented, or caused to be presented, false or fraudulent claims for payment to the United States in violation of § 3729(a)(1)(A) of the FCA. Such claims caused actual damages to the United States.

67. Throughout the relevant time period, the Defendant made, used, or caused the making or use of, false records or statements, including express or implied certifications that said CM services were provided to their qualifying Medicaid beneficiaries, to fraudulently obtain reimbursement from Medicaid and other federal health care programs. By and through these acts, the Defendant knowingly made or used, or caused the making or use of false records or statements material to falsify or fraudulent claims to the United States, in violation of § 3729(a)(1)(B) of the FCA. Such claims caused actual damages to the United States.

## Count II
### North Carolina False Claims Act,
### N.C. Gen. Stat. § 1-607(A)(1)-(2)

68. Relator re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

69. Throughout the relevant time periods, Defendant knowingly submitted claims, or caused claims to be submitted for CAP/DA CM services that were exaggerated as to the number of actual time service units provided or were for non-covered services. By these acts, the Defendant knowingly presented, or caused to be presented, false or fraudulent claims for payment to North Carolina in violation of § 1-607(A)(1) of the North Carolina False Claims Act. Such claims caused actual damages to North Carolina.

70. Throughout the relevant time period, Defendants made or used, or caused the making or use of, false records or statements – including express or implied certifications -- that said CM services were provided to their qualifying beneficiaries in order to obtain reimbursement from Medicaid and/or other federal or state health care programs. Through these acts, the Defendant knowingly made or used, or caused the making or use of false records or statements material to false or fraudulent claims to North Carolina, in violation of § 1-607(A)(2) of the North Carolina False Claims Act. Such claims caused actual damages to North Carolina.

**COUNT III**
Wrongful Retaliation
(31 USC § 3730 (h)(l) & N.C. Gen. Stat. § 1-613)

74. At all times herein mentioned, the Defendant did wrongfully retaliate against the Relator/Plaintiff in violation of 31 USC § 3730 (h)(l) & N.C. Gen. Stat. § 1-613.

75. As set forth above, defendant routinely, systematically, and knowingly, violated numerous Medicaid regulations in order to fraudulently obtain funds from the governmental entities.

76. Since the Relator's notice to her Defendant employer that she would not follow the minimum billing units as dictated by the Defendant nor enter unworked time into the Barnestorm or E-Cap system, the Relator has been and continues to be harassed, unequally treated and has suffered other retaliation because of her lawful acts and efforts to stop what she reasonably and in good faith believed to be the Defendant's violations of law.

77. Plaintiff repeatedly informed her supervisor, the Defendant's quality review officer, risk manager and the Defendant's President that she would not continue to bill and seek reimbursement for unqualified and/or unsubstantiated CM work and that the Defendant should cease its actions, guidance or directions to CMs requiring false billing, and that she had reported the same to the appropriate governmental entities.

78. Plaintiffs objections put the Defendant on notice that it could be subjected to litigation under the False Claims Act, the NC FCA and other applicable law and regulation.

79. In retaliation for her lawful activities in trying to cause the Defendant to cease such false billings, and to remedy prior false billings by Defendant, the Relator has been subject to a hostile work environment, including but not limited to: meritless adverse employment evaluations, unequal treatment with regard to work schedules, location of work, holiday and sick leave review and the intentional and purposeful minimalization and marginalization of the Relator in her job, office environment and job performance review due to the legitimate complaints she has made regarding the Defendant's false claims.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff/Relator, on behalf of the United States of America and the State of North Carolina, prays:

1. That judgment be entered in favor of the Plaintiff/Relator, the United States and the State of North Carolina against the Defendants, jointly and severally, for the maximum amount of damages on each Count;

2. That said damages be tripled as required by the Federal False Claims Acts and civil penalties of no more than Eleven Thousand Dollars ($11,000.00) and no less than Five Thousand Five Hundred Dollars ($5,500.00) for each false claim be added thereto;

3. That said damages include the maximum damages permitted by NC FCA and the maximum fine or penalty permitted by NC FCA, and any other recoveries or relief provided for under the State FCA; and

4. For such other and further relief as the Court may deem appropriate.

5. That the Relator receive the maximum Relator's award of the proceeds as permitted by law whether received by judgment or settlement of this action collected by the United States and the State of North Carolina, together with all expenses necessarily incurred, and reasonable attorneys' fees and costs. Relator requests that this award be based upon the total value recovered, both tangible and intangible, including any and all amounts received from individuals or entities not parties hereto but who have or continue to falsely submit and receive reimbursement from N.C. Medicaid for SCU PCS which said provider fails to provide as identified herein.

22

## DEMAND FOR JURY TRIAL

A jury trial is demanded in this case.

Dated this 3rd day of February, 2020.

Respectfully submitted,

**MARSHALL ROTH & GREGORY, P.C**

/s/ Clifford C. Marshall, Jr.
Clifford C. Marshall, Jr.
Attorney for the Relator
NC State Bar No. 10418
P.O. Box 769
Asheville, NC 28802
Telephone: (828) 281-2100
Facsimile: (828) 281-2120
Email: cmarshall@mrglawfirm.com