DocuSign Envelope ID: 82130680-BD44-4CEF-8F1E-26A63EB9287A

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among: (1) the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), the State of North Carolina, acting through the North Carolina Office of the Attorney General and on behalf of the North Carolina Department of Health and Human Services, Division of Health Benefits (collectively, the "Government"); (2) Healthkeeperz, Inc. ("Healthkeeperz"); and (3) Ginger Hill ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      Healthkeeperz, a North Carolina corporation with its main office in Pembroke, North Carolina, provides case management services for Medicaid beneficiaries pursuant to the North Carolina Medicaid Community Alternatives Program for Disabled Adults ("CAP/DA").

B.      On February 4, 2020, Relator filed a qui tam action in the United States District Court for the Western District of North Carolina captioned *United States ex rel. Ginger L. Hill v. Healthkeeperz, Inc.*, Case No. 1:20-CV-32, pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) and the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et. seq.*(the Civil Action). Relator alleges that Healthkeeperz presented false claims to the United States and State of North Carolina and received excessive payments from North Carolina Medicaid. Relator alleges Healthkeeperz presented claims for reimbursement for activities that were not reimbursable under the applicable Medicaid Clinical Coverage Policy and that Healthkeeperz instructed case managers to inflate the time spent on certain case management activities.

C.      The Government contends that Healthkeeperz submitted or caused to be submitted claims for payment to the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"), in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729-3733, and the North Carolina False Claims Act, N.C.G.S. §§ 1-605, *et. seq.*

D.      The Government contends that it has certain civil claims against Healthkeeperz arising from the following conduct:

1. From January 1, 2016, through October 31, 2019, Healthkeeperz submitted claims for case management to North Carolina Medicaid which were not reimbursable because they were not covered services under North Carolina Medicaid. Specifically, Healthkeeperz submitted claims for reimbursement for patients for time that case managers spent in staff meetings wherein all beneficiaries were not discussed and where the applicable clinical coverage policy for case management, North Carolina Clinical Coverage Policy 3K-2, denotes that "staffing" is not case management and therefore not reimbursable.

As a result of the foregoing conduct, the Government alleges that Healthkeeperz submitted false or fraudulent claims to Medicaid. The conduct set forth in this Paragraph D is referred to below as the "Covered Conduct."

E.      This Settlement Agreement is neither an admission of liability by Healthkeeperz nor a concession by the Government that its claims are not well founded.

F.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.      Healthkeeperz shall pay to the Government the amount of Two Million, One Hundred Thousand dollars ($2,100,000.00) ("Settlement Amount") and interest on the Settlement Amount at a rate of 1.14% per annum from March 16, 2022, of which One Million, Fifty Thousand Dollars ($1,050,000) is restitution, no later than thirty (30) days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of North Carolina.

2.      Conditioned upon the Government receiving the Settlement Amount and as soon as feasible after receipt, the Government shall pay to Relator nineteen (19) percent of such payment received under the Agreement as soon as feasible after receipt of payment (Relator's Share).

3.      Subject to the exceptions in Paragraph 5 (concerning reserved claims) below, and upon the Government's receipt of the Settlement Amount plus interest due under Paragraph 1, the Government releases Healthkeeperz, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them from any civil or administrative monetary claim the Government has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, the North Carolina False Claims Act, N.C.G.S. § 1-605, *et. seq.*; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4.      Subject to the exceptions in Paragraph 5 below, and upon the Government's receipt of the Settlement Amount, plus interest due under Paragraph 1, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Healthkeeperz from any civil

3

monetary claim the Relator has on behalf of the Government for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5.     Notwithstanding the releases given in Paragraph 3 of this Agreement, or any other term of this Agreement, the following claims and rights are specifically reserved and are not released:

    a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.     Any criminal liability;

    c.     any civil or administrative liability under any statute, regulation, or rule not expressly covered by the release in Paragraph 4 above, including, but not limited to, any and all of the following claims: (i) claims involving unlawful or illegal conduct based on State or federal antitrust violations; and (ii) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

    d.     Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

    e.     Any liability to the Government (or its agencies) for any conduct other than the Covered Conduct;

    f.     Any liability based upon obligations created by this Agreement;

    g.     Any liability of individuals;

    h.     Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    i.     Any liability for failure to deliver goods or services due;

j.     Any liability for personal injury or property damage or for other

consequential damages arising from the Covered Conduct;

6.     Relator and her heirs, successors, attorneys, agents, and assigns shall not object to

this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under

all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relator's receipt

of the Relator's Share, Relator and her heirs, successors, attorneys, agents, and assigns fully and

finally release, waive, and forever discharge the Government, its agencies, officers, agents,

employees, and servants, from any claims arising from the filing of the Civil Action or under 31

U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil

Action.

7.     Healthkeeperz waives and shall not assert any defenses Healthkeeperz may have

to any criminal prosecution or administrative action relating to the Covered Conduct that may be

based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth

Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment

of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or

administrative action.

8.     Healthkeeperz fully and finally releases the Government, its agencies, officers,

agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses

of every kind and however denominated) that Healthkeeperz has asserted, could have asserted, or

may assert in the future against the Government, its agencies, officers, agents, employees, and

servants, related to the Covered Conduct or the Government's investigation or prosecution

thereof.

9.     The Settlement Amount shall not be decreased as a result of the denial of claims

for payment now being withheld from payment by any Medicare contractor (e.g., Medicare

5

Administrative Contractor, fiscal intermediary, carrier), the Medicaid Program or any Medicaid contractor or intermediary or any state payer on behalf of the Medicaid Program related to the Covered Conduct; and Healthkeeperz agrees not to resubmit to any Medicare contractor, to the Medicaid Program, or any state payor any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

10. Healthkeeperz agrees to the following:

    a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Healthkeeperz, its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1)     the matters covered by this Agreement;

    (2)     the Government's audit(s) and civil investigation(s) of the matters covered by this Agreement;

    (3)     Healthkeeperz's investigation, defense, and corrective actions undertaken in response to the Government's audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

    (4)     the negotiation and performance of this Agreement;

    (5)     the payment Healthkeeperz makes to the Government pursuant to this Agreement and any payments that Healthkeeperz may make to Relator, including costs and attorneys fees; and

6

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

(FEHBP) (hereinafter referred to as Unallowable Costs).

        b.      Future Treatment of Unallowable Costs:  Unallowable Costs shall be

separately determined and accounted for by Healthkeeperz, and Healthkeeperz shall not charge

such Unallowable Costs directly or indirectly to any contracts with the Government or any State

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost

statement, information statement, or payment request submitted by Healthkeeperz or any of its

subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

        c.      Treatment of Unallowable Costs Previously Submitted for Payment:

Healthkeeperz further agrees that within 90 days of the Effective Date of this Agreement it shall

identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors,

and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph)

included in payments previously sought from the United States, or any State Medicaid program,

including, but not limited to, payments sought in any cost reports, cost statements, information

reports, or payment requests already submitted by Healthkeeperz or any of its subsidiaries or

affiliates, and shall request, and agree, that such cost reports, cost statements, information

reports, or payment requests, even if already settled, be adjusted to account for the effect of the

inclusion of the Unallowable Costs.  Healthkeeperz agrees that the United States, at a minimum,

shall be entitled to recoup from Healthkeeperz any overpayment plus applicable interest and

penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost

reports, information reports, cost statements, or requests for payment.

        Any payments due after the adjustments have been made shall be paid to the United

States pursuant to the direction of the Department of Justice and/or the affected agencies.  The

United States reserves its rights to disagree with any calculations submitted by Healthkeeperz or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Healthkeeperz or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

        d.      Nothing in this Agreement shall constitute a waiver of the rights of the Government to audit, examine, or re-examine Healthkeeperz's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

11.      Healthkeeperz agrees to cooperate fully and truthfully with the Government's investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Healthkeeperz shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Healthkeeperz further agrees to furnish to the Government, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

12.      This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 13 (waiver for beneficiaries paragraph), below.

13.      Healthkeeperz agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their

8

parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

14.     Healthkeeperz expressly warrants that it has reviewed its financial condition and that it is currently solvent, meaning that a fair valuation of its property (exclusive of exempt property) exceeds the sum of its debts.

15.     Upon receipt of the payment described in Paragraph 1, above, the Government and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1). The stipulation of dismissal shall provide that: as to the Government, all claims and causes of action set forth in the *qui tam* complaint and brought on behalf of the Government against Healthkeeperz for the Covered Conduct, as that term is specifically defined in Paragraph D of this Settlement Agreement, shall be dismissed with prejudice, and all other claims against Healthkeeperz and all claims against any other defendant shall be dismissed without prejudice to the Government; and all claims and causes of action set forth in the *qui tam* complaint shall be dismissed with prejudice as to Relator.

16.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

18.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of North Carolina, Asheville Division. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

9

DocuSign Envelope ID: 82130680-BD44-4CEF-8F1E-26A63EB9287A

19.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

20.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22.     This Agreement is binding on Healthkeeperz's successors, transferees, heirs, and assigns.

23.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24.     All Parties consent to the Government's disclosure of this Agreement, and information about this Agreement, to the public.

25.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[Signatures on following pages]

## THE UNITED STATES OF AMERICA

Dena J. King
UNITED STATES ATTORNEY

DATED: 5/17/2022    BY: _____

Caroline B. McLean
Assistant United States Attorney
Western District of North Carolina

DATED: 5/17/2022    BY: _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

## STATE OF NORTH CAROLINA

JOSHUA H. STEIN
North Carolina Attorney General

DATED: 5/16/2022    BY: _____

F. EDWARD KIRBY, JR.
Special Deputy Attorney General
Director, Medicaid Investigations Division
North Carolina Department of Justice
5505 Creedmoor Road, Ste. 300
Raleigh, NC 27612

## NC DEPARTMENT OF HEALTH & HUMAN SERVICES
## DIVISION OF HEALTH BENEFITS

DATED: 05/16/22 | 6:21 AM PDT    BY: _____

DocuSigned by:
Dave Richard
11395D232A054A2

DAVE RICHARD
Deputy Secretary, NC Medicaid
NC Department of Health & Human Services,
Division of Health Benefits

11

## HEALTHKEEPERZ - DEFENDANT

DATED: ____5/17/2022____     BY:  _____
                                           084CA69264E64FE...
                                     Tim Brooks

DATED: ____5/17/2022____     BY:  _____
                                           53B292EAC9E14DA...
                                     Terri Harris
                                     Counsel for Healthkeeperz

12

**GINGER HILL - RELATOR**

DATED: 5/17/22          BY: _____
                            Ginger Hill

DATED: 5/17/2022        BY: _____
                            Clifford C. Marshall, Jr.
                            Counsel for Ginger Hill

13